IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

SAMANTHA R. HARRISON, )
)
                Plaintiff, )
)
vs. )
)
THE UNITED STATES OF AMERICA, )
)   No. 2:19-cv-0017-HRH
                Defendant. )
_____)

O R D E R

Motion to Exclude Expert Testimony of Dr. Andrea Trescot

Defendant moves to exclude the testimony of Dr. Andrea Trescot.[1] This motion is opposed.[2] Oral argument was not requested and is not deemed necessary.

Background

Plaintiff Samantha Harris brings this Federal Tort Claims Act medical malpractice case in which she alleges that on November 10, 2016, she had three of her wisdom teeth extracted by Dr. Kretzschmar, a deemed federal employee.[3] Plaintiff alleges that "[d]uring

---

[1]Docket No. 19.

[2]Docket No. 25.

[3]Complaint for Medical Malpractice at 2-3, ¶¶ 6, 10-12, Docket No. 1.

the course of the extractions, Dr. Kretzschmar either resected [her] right lingual nerve or severely and permanently impaired its function."[4] Plaintiff avers that she has "developed what is known as chronic regional pain syndrome" as a result of the injury to her lingual nerve.[5]

In January 2019, Dr. Weidner, one of plaintiff's treating physicians, noted that he was referring plaintiff

> back to the pain management program that she was instructed to see through the Duke healthcare system (Dr. Aurelio Alonso at Brier Creek Pain Clinic[.]). If he provides therapeutic procedures such as Botox injections for the lingual and/or trigeminal nerve (and these are successful), and the services could be provided here in Anchorage, I will be happy to make a referral to those programs. Specifically Dr. Lui at Neuroversion and/or Dr. Trescot.[[6]]

Jill Friedman prepared a Life Care Plan that addressed plaintiff's "need for future medical treatment and her vocational potential subsequent to the injury that she sustained on 11/10/16."[7] In preparing the Life Care Plan, Friedman "consulted with Andrea Trescot, M.D., Interventional Pain Physician[.]"[8] Friedman avers that the purpose of this consultation

---

[4]Id. at 3, ¶ 14.

[5]Declaration of Samantha Harrison at 1, ¶ 2, Docket No. 26.

[6]Exhibit 2 at 3, Plaintiff Harrison's Opposition [etc.], Docket No. 25.

[7]Friedman Expert Report at 1, Exhibit A, Motion to Exclude any Expert Testimony Offered by Dr. Andrea Trescot, Docket No. 19.

[8]Id.

-2-

"was to facilitate pain treatment for [plaintiff], and to coordinate a reasonable and necessary treatment plan with the physician who would be administering treatment[.]"[9] Friedman avers that she consulted with Dr. Trescot because she was one of the physicians referenced in Dr. Weidner's notes.[10]

On September 30, 2019, Dr. Trescot signed a statement, which was included in Friedman's expert report, that she had "agreed to evaluate and treat" plaintiff, that she "agree[d] with the contents of the medical plan as presented in" the Life Care Plan and that "[i]t is within my expertise to opine that it is more likely than not that the quantity, frequency and duration of services listed in this chart will be medically necessary."[11] Dr. Trescot billed Friedman for her time.[12]

On September 30, 2019, Friedman requested that plaintiff be scheduled to see Dr. Trescot.[13] An appointment was scheduled for March 6, 2020,[14] the day discovery in this case

---

[9]Declaration of Jill Friedman at 2, ¶ 8, Docket No. 27.

[10]Id. at 2, ¶ 4.

[11]Friedman Expert Report, Exhibit A at 12, Motion to Exclude any Expert Testimony Offered by Dr. Andrea Trescot, Docket No. 19.

[12]Exhibit G at 1, Motion to Exclude any Expert Testimony Offered by Dr. Andrea Trescot, Docket No. 19.

[13]Exhibit E at 1, Motion to Exclude any Expert Testimony Offered by Dr. Andrea Trescot, Docket No. 19.

[14]Exhibit D at 1, Motion to Exclude any Expert Testimony Offered by Dr. Andrea Trescot, Docket No. 19.

-3-

was set to close.[15] Plaintiff avers that March 6, 2020 was when she had her "first face-to-face meeting/appointment with" Dr. Trescot and that she saw Dr. Trescot again on March 20, 2020, at which time "Dr. Trescot administered a Botox injection, which is one of the methods being used to remedy my pain."[16] Plaintiff also avers that she "plan[s] on continuing to treat with Dr. Trescot four times a year for pain-management. I expect that Dr. Trescot will be providing and prescribing medications, applying therapies and remedies, and generally managing my pain."[17] Plaintiff testified that her lawyer and Friedman accompanied her to the March 6, 2020 appointment.[18] She also testified that prior to March 6, 2020, she did not consider Dr. Trescot one of her treating providers.[19]

On October 9, 2019, plaintiff identified Dr. Trescot as an expert witness in a document entitled "Plaintiff's Supplemental Expert Witness Identification."[20] Dr. Trescot was listed as an "Expert in Pain Management[.]"[21]

---

[15] Order from Chambers at 1, Docket No. 15.

[16] Declaration of Samantha Harrison at 2-3, ¶¶ 9-10, Docket No. 26.

[17] Id. at 3, ¶ 11.

[18] Deposition of Samantha R. Harrison at 24:6-10, Exhibit A, Reply in Support of Motion to Exclude Any Expert Testimony Offered by Dr. Andrea Trescot, Docket No. 36.

[19] Id. at 25:6-8.

[20] Exhibit 5, Plaintiff Harrison's Opposition [etc.], Docket No. 25.

[21] Id. at 1.

-4-

On October 28, 2019, the date on which plaintiff's expert reports were due,[22] plaintiff disclosed Dr. Trescot as a non-retained expert witness.[23] Plaintiff included the following summary of Dr. Trescot's testimony:

> Dr. Trescot is an expert in pain management. She is a non-retained expert who is board-certified in interventional pain management. Dr. Trescot agreed to review records and provide recommendations for treatment. She has agreed to treat Ms. Harrison so she will not have to travel to Duke Medical Center four times a year. Dr. Trescot has reviewed Ms. Friedman's Life Care Plan as well as reviewed relevant pain management records of Ms. Harrison. Dr. Trescot will testify that the treatments outlined in the Life Care Plan are reasonable and necessary and will likely continue over the course of Ms. Harrison's life.[24]

In her final witness list, filed on January 21, 2020, plaintiff included Dr. Trescot as a "non-retained expert witness."[25] Plaintiff again stated that

> Dr. Trescot is an expert in pain management. She is a non-retained expert who is board-certified in interventional pain management. Dr. Trescot agreed to review records and provide recommendations for treatment. She has agreed to treat Ms. Harrison so she will not have to travel to Duke Medical Center four times a year. Dr. Trescot has reviewed Ms. Friedman's Life Care Plan as well as reviewed relevant pain management records of Ms. Harrison. Dr. Trescot will testify that the treatments outlined in the Life Care Plan are reasonable and

---

[22]Order from Chambers at 1, Docket No. 13.

[23]Plaintiff's Expert Witness Disclosure, Exhibit 6 at 2, Plaintiff Harrison's Opposition [etc.], Docket No. 25.

[24]Id.

[25]Plaintiff's Final Trial Witness List at 5, Docket No. 17.

necessary and will likely continue over the course of Ms. Harrison's life.[26]

Defendant now moves to exclude any expert testimony from Dr. Trescot.

Discussion

Rule 26(a)(2), Federal Rules of Civil Procedure, "provides for two different types of expert disclosure: those retained or specifically employed to give expert testimony in a case and those who are not retained or specially employed, but who nonetheless may provide expert testimony[.]" Laslovich v. State Farm Fire and Cas. Co., 307 F.R.D. 533, 535 (D. Mont. 2015) (internal citations omitted). "An expert who falls into the first category is required to prepare an expert report." Id. "An expert who falls into the second category, however, need only provide disclosures stating both the subject matter on which the non-retained expert is expected to present evidence and a summary of the facts and opinions as to which the non-retained expert is expected to testify." Id. Treating physicians often fall into the second category. Fed. R. Civ. P. 26(a)(2)(C), 2010 Ad. Comm. Notes. But, a treating physician who testifies as an expert "is only exempt from Rule 26(a)(2)(B)'s written report requirement to the extent that his opinions were formed during the course of treatment." Goodman v. Staples The Office Superstore, LLC, 644 F.3d 817, 826 (9th Cir. 2011).[27] "Opinions that were not formed during the course of treatment . . . must be

---

[26]Id. at 5-6.

[27]"Though Goodman interpreted a prior version of" Rule 26, "the new rule does not alter Goodman's holding that a treating physician is only exempt from Rule 26(a)(2)(B)'s
(continued...)

-6-

presented in a detailed Rule 26(a)(2)(B) report." Holcomb v. Ramar, Case No. 1:13-CV-1102 AWI SKO, 2017 WL 2930854, at *1 (E.D. Cal. July 10, 2017).

The issue here is whether Dr. Trescot was a treating physician for purposes of Rule 26 at the time she offered her opinion about the Life Care Plan. "'Treating physicians are not retained for purposes of trial. Their testimony is based upon their personal knowledge and the treatment of the patient and not information acquired from outside sources for the purpose of giving an opinion in anticipation of trial.'" Piper v. Harnischfeger Corp., 170 F.R.D. 173, 175 (D. Nev. 1997) (quoting Baker v. Taco Bell Corp., 163 F.R.D. 348, 349 (D. Colo. 1995)).

Plaintiff argues that Dr. Trescot was a treating physician. Plaintiff suggests that it is sufficient that Dr. Trescot had reviewed plaintiff's files and charts and agreed to treat plaintiff at the time she offered her opinion about the Life Care Plan in September 2019. Plaintiff argues that a treating relationship can begin prior to a face-to-face meeting if, as happened here, a physician reviews a patient's files and charts prior to actually seeing the patient. Plaintiff argues that Friedman did not "recruit" Dr. Trescot or "manufacture" a relationship with Dr. Trescot, as defendant contends. Rather, plaintiff contends that Friedman reached out to Dr. Trescot in an attempt to find a local pain management specialist

---

<sup>27</sup>(...continued)
written report requirement to the extent that his opinions were formed during the course of treatment." Adams v. Roberts, Case No. CV 18-148-M-DLC, 2019 WL 6715604, at *1 n.3 (D. Mont. Dec. 10, 2019) (quoting Goodman, 644 F.3d at 826).

-7-

for plaintiff, based on the mention of Dr. Trescot in Dr. Weidner's notes. Plaintiff also argues that it is within the role of a treating physician to offer opinions about the reasonableness of future treatment. See, e.g., Crimmins v. United States, Case No. 2:17-cv-3470-DCN, 2019 WL 3766475, at *3 (D.S.C. August 9, 2019) ("Dr. Highsmith's opinions about Crimmins's future medical treatment do fall within the scope of a treating physician's permissible testimony absent an expert report"). Plaintiff also argues that the fact that Friedman paid Dr. Trescot for her review of plaintiff's files and charts does not mean that Dr. Trescot is a retained expert. See Procter & Gamble Co. v. Haugen, 184 F.R.D. 410, 413 (D. Utah 1999) ("[t]he mere payment for consulting time does not make an expert per se a 'retained' expert"). Plaintiff also emphasizes the fact that Dr. Trescot has actually treated her, as evidence by her declaration. Plaintiff argues that the fact that her attorney and Friedman accompanied her to the March 6, 2020 appointment does not mean that Dr. Trescot is not one of her treating physicians. And, plaintiff argues that it is irrelevant that Dr. Trescot was not listed as a treating physician in her responses to defendant's interrogatories, given that those were served on defendant on July 3, 2019,[28] which was prior to Dr. Trescot agreeing to treat plaintiff.

What is relevant here is that Dr. Trescot's September 2019 opinion was not an opinion formed during the course of Dr. Trescot's treatment of plaintiff. Dr. Trescot's September 2019 opinion could not have been formed during the course of her treatment of plaintiff

---

[28]Declaration of Counsel at 3, ¶ 12, Docket No. 28.

-8-

Case 3:19-cv-00017-HRH   Document 85   Filed 04/06/21   Page 8 of 11

because she had not yet begun to treat plaintiff. She had agreed to treat plaintiff but such treatment did not begin until March 6, 2020. As plaintiff herself testified, she did not consider Dr. Trescot to be a treating provider prior to March 6, 2020. In September 2019, Dr. Trescot was engaged by Friedman to comment on the adequacy of the Life Care Plan after reviewing the plan and plaintiff's medical files. That is what a retained expert does; it is not what a treating physician does. Because Dr. Trescot's opinion about the Life Care Plan was not formed during her treatment of plaintiff, she cannot be considered a treating physician for purposes of Rule 26.

Because Dr. Trescot was not a treating physician at the time she offered her September 2019 opinion, she was subject to the written report requirement that applies to retained experts. There is no dispute that Dr. Trescot did not disclose a written expert report. Thus, plaintiff "'is not allowed to use'" Dr. Trescot's opinion as "'evidence on a motion, at a hearing, or at a trial, unless the failure'" to provide a written report "'was substantially justified or harmless.'" Carrillo v. B & J Andrews Enterprises, LLC, Case No. 2:11–cv–01450–RCJ–CWH, 2013 WL 394207, at *6 (D. Nev. Jan. 29, 2013) (quoting Fed. R. Civ. P. 37(c)(1)).

> "Several factors [] guide the determination of whether substantial justification and harmlessness exist, including (1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of trial; and (4) bad faith or willfulness in not timely disclosing the evidence."

Amarin Pharma, Inc. v. West-Ward Pharmaceuticals Int'l Ltd., 407 F. Supp. 3d 1103, 1116 (D. Nev. 2019) (quoting Silvagni v. Wal-Mart Stores, Inc., 320 F.R.D. 237, 242 (D. Nev. 2017)). "[T]he court retains discretion to fashion appropriate relief in the event of a failure to disclose." Id.

As to the issue of prejudice or surprise, defendant was aware, prior to the close of discovery, that plaintiff intended to rely on Dr. Trescot as an expert witness. Defendant was also aware that Dr. Trescot intended to opine that the medical services included in the Life Care Plan were reasonable and appropriate. Thus, defendant cannot claim any undue surprise as to Dr. Trescot's opinion about the Life Care Plan. But, defendant would suffer some prejudice if plaintiff were allowed to rely on Dr. Trescot's opinion about the Life Care Plan because defendant does not know the basis for Dr. Trescot's opinion. Although defendant could have deposed Dr. Trescot prior to the close of discovery in order to learn more about the basis for Dr. Trescot's opinion, such a deposition likely would have been somewhat ineffective, given that Dr. Trescot did not prepare a written report and had not yet begun to actually treat plaintiff. Moreover, because Dr. Trescot did not prepare a written report, as she was required to do as a retained expert, defendant did not the opportunity to have one of its experts review and respond to Dr. Trescot's opinion. This prejudice could, however, be easily cured by reopening discovery as to Dr. Trescot so that she could disclose a written report and defendant could be given opportunity to have one of its experts respond to her report and to take her deposition.

-10-

Reopening discovery as to Dr. Trescot would not disrupt the trial in this case as no trial date has been set and no trial date is likely to be set for several months, given the backlog of criminal trials due to the COVID-19 pandemic. And, despite defendant's arguments to the contrary, there has been no bad faith or willfulness on the part of plaintiff. While it seems somewhat obvious to the court that Dr. Trescot was not a treating provider at the time she offered her opinion on the Life Care Plan, the court cannot conclude that plaintiff acted willfully or in bad faith by insisting that Dr. Trescot was a non-retained expert. Plaintiff's counsel's handling of plaintiff's experts in this case has been less than ideal, but there is no evidence of bad faith or willfulness as it pertains to Dr. Trescot.

## Conclusion

Based on the foregoing, the motion to exclude Dr. Trescot's expert testimony[29] is denied. But, discovery as to Dr. Trescot will be reopened for a period of ninety days so that Dr. Trescot can disclose a written report, defendant can have one of its experts respond to her report, and defendant can take Dr. Trescot's deposition. On or before April 20, 2021, the parties shall confer and, on or before April 27, 2020, propose to the court a schedule for this additional discovery.

DATED at Anchorage, Alaska, this 6th day of April, 2021.

/s/ H. Russel Holland
United States District Judge

---

[29] Docket No. 19.