IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

SAMANTHA R. HARRISON,              )
                                  )
                    Plaintiff,    )
                                  )
        vs.                       )
                                  )
THE UNITED STATES OF AMERICA,     )
                                  )        No. 2:19-cv-0017-HRH
                    Defendant.    )
_____ )


O R D E R

Motion for Summary Judgment;
Motion for Leave to Replace Standard-of-Care Expert

Defendant the United States of America moves for summary judgment.[1]  This motion

is opposed by plaintiff Samantha Harrison,[2] and she has filed a conditional motion for an

enlargement of time in which to respond to the motion for summary judgment.[3]   This

_____

[1]Docket No. 63.

[2]Docket No. 70.

[3]Docket No. 68.

conditional motion is opposed.[4] Plaintiff also moves for leave to replace her standard-of-care expert and to reset relevant discovery deadlines.[5] This motion is opposed.[6] In addition, defendant moves to supplement its opposition to plaintiff's motion for leave to replace her standard-of-care expert.[7] Plaintiff has responded to the motion to supplement,[8] and defendant has moved to strike this response.[9] Oral argument was not requested on any of the pending motions and is not deemed necessary.

Facts

Plaintiff brings this Federal Tort Claims Act medical malpractice case in which she alleges that on November 10, 2016, she had three of her wisdom teeth extracted by Dr. Kretzschmar, a deemed federal employee.[10] Plaintiff alleges that "[d]uring the course of the extractions, Dr. Kretzschmar either resected [her] right lingual nerve or severely and permanently impaired its function."[11] It is undisputed that prior to the extraction, plaintiff

---

[4]Docket No. 73.

[5]Docket No. 65.

[6]Docket No. 75.

[7]Docket No. 78.

[8]Docket No. 81.

[9]Docket No. 82.

[10]Complaint for Medical Malpractice at 2-3, ¶¶ 6, 10-12, Docket No. 1.

[11]Id. at 3, ¶ 14.

did not have lingual nerve damage.  It is also undisputed that after the extraction, plaintiff now has permanent lingual nerve damage.

Plaintiff alleges that this damage to her lingual nerve has caused "permanent numbness in much of her tongue" and that this "numbness denies [her] the full and natural use of her tongue and interferes with its use and function, including, but not limited to, difficulty eating, diminished taste and speech difficulty, normal use of her tongue and chronic pain."[12]  In July 2017, plaintiff had reanastomosis surgery in an attempt to correct the issues she was having.

In March of 2018, plaintiff retained Dr. Robert Staley, a dentist "who specializes in oral and maxillofacial surgery,"[13] as her standard-of-care expert.[14]  In his expert report, dated September 20, 2019, Dr. Staley opined that "[a] dental instrument under the control of Dr. Kretzschmar cut [plaintiff's lingual] nerve and it is below the standard of care to allow this to happen. . . ."[15]  Dr. Staley explained the "this nerve is not in the field of surgery" and that "[w]hen this nerve is severely injured, in all probability, the drill used to remove bone and/or

---

[12]Id. at 4, ¶¶ 17-18.

[13]Declaration of Dr. Robert W. Staley, Jr. DDS at 1, ¶ 1, Docket No. 66.

[14]Declaration of Counsel [etc.] at 1, ¶ 2, attached to Plaintiff Harrison's Motion for Leave to Designate an Additional Expert, Docket No. 18.

[15]Dr. Staley's Expert Report at 2, Exhibit A, Motion for Summary Judgment, Docket No. 63.

-3-

section the tooth into several pieces slipped into the lingual area where the nerve is located."[16] At his deposition, Dr. Staley testified that his opinion was that Dr. Kretzschmar

> did not maintain control of the drill. He allowed the drill -- he slipped with the drill, pure and simple. And allowed it to go into an area where it should not have gone and into an area where the lingual nerve was, and it severely injured the lingual nerve. So what he didn't do is maintain control of the drill. He allowed the drill . . . to slip.[17]

When asked what evidence he had that "the drill slipped causing the injury[,]" Dr. Staley responded: "that's the only way it could have happened."[18] Dr. Staley also testified that during the reanastomosis surgery which plaintiff had after her extraction, "they found the neuroma. They found the nerve basically severely severed or basically almost completely severed. There are a few fibers hanging together. More probable than not what caused that type of injury was the drill."[19] Dr. Staley testified "that severe lingual nerve damage during a wisdom tooth extraction is . . . below the standard of care, yes, it's negligence."[20]

Defendant now moves for summary judgment on two grounds: 1) plaintiff is relying on an impermissible res ipsa loquitur-type theory of negligence and 2) Dr. Staley is not

---

[16]Id.

[17]Deposition of Robert W. Staley, Jr., D.D.S. at 66:21-67:3, Exhibit B, Motion for Summary Judgment, Docket No. 63.

[18]Id. at 67:5-8.

[19]Staley Deposition at 64:13-17, Exhibit D, United States' Opposition to Plaintiff's Motion for Leave to Designate an Additional Expert, Docket No. 22.

[20]Id. at 51:21-25.

competent to testify under AS 09.20.185. Plaintiff, in turn, moves for leave to replace Dr. Staley as her standard-of-care expert.

<u>Discussion</u>

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The initial burden is on the moving party to show that there is an absence of genuine issues of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986). If the moving party meets its initial burden, then the non-moving party must set forth specific facts showing that there is a genuine issue for trial. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986). In deciding a motion for summary judgment, the court views the evidence of the non-movant in the light most favorable to that party, and all justifiable inferences are also to be drawn in its favor. <u>Id.</u> at 255. "[T]he court's ultimate inquiry is to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." <u>Arandell Corp. v. Centerpoint Energy Services, Inc.</u>, 900 F.3d 623, 628–29 (9th Cir. 2018) (citation omitted).

Under Alaska law,

> [i]n a malpractice action based on the negligence or wilful misconduct of a health care provider, the plaintiff has the burden of proving by a preponderance of the evidence
>
> (1) the degree of knowledge or skill possessed or the degree of care ordinarily exercised under the circumstances, at the time of

-5-

the act complained of, by health care providers in the field or specialty in which the defendant is practicing;

(2) that the defendant either lacked this degree of knowledge or skill or failed to exercise this degree of care; and

(3) that as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.

AS 09.55.540(a). "A plaintiff must establish the three elements of medical malpractice—duty, breach of duty, causation—through expert testimony, unless the negligence is clear enough so as to be evident to a lay person." Pete v. United States of Amer., No. 3:11–cv–00122 JWS, 2013 WL 4501451, at *2 (D. Alaska Aug. 22, 2013). Here, "[t]he injury [plaintiff] alleges does not fall within this [latter] category." Parker v. Tomera, 89 P.3d 761, 766 (Alaska 2004). Thus, in order to prove her medical malpractice claim, plaintiff must offer expert testimony as to the standard of care, breach of that standard, and causation.

Defendant first argues that plaintiff's medical malpractice claim fails as a matter of law because plaintiff is relying on an impermissible res ipsa loquitur-type theory of negligence. Under Alaska law, "[i]n malpractice actions there is no presumption of negligence on the part of the defendant." AS 09.55.540(b). AS 09.55.540(b) "nullifie[s] the doctrine of res ipsa loquitur in medical malpractice actions." Parker, 89 P.3d at 770. The statute was enacted to "counter the 1964 case of Patrick v. Sedwick, Alaska, 391 P.2d 453[.]" Priest v. Lindig, 583 P.2d 173, 175-76 n.7 (Alaska 1978).

-6-

In Patrick, Mary Patrick alleged that Dr. Sedwick, "while performing a subtotal thyroidectomy upon her negligently severed certain of her nerve structures causing portions of the vocal chords and organs of her throat to become paralyzed so that she is unable to speak well and has lost two thirds of her breathing capacity." Patrick, 391 P.2d at 454. The Alaska Supreme Court found that Patrick had "made out a prima facie case of negligence" because the evidence showed that prior to the surgery, she had "a soft, clear voice, indicating a healthy vocal chord and recurrent laryngeal nerve" and that after the surgery, "she experienced difficulty in breathing and her voice was hoarse" and "[p]ostoperative examinations disclosed that her left vocal chord was totally and permanently paralyzed." Id. at 456. The court explained that

> [t]his was as far as the plaintiff could go in proving her case. To show more in the way of negligence she would have had to be a conscious observer of all that transpired in the operation or be able to penetrate the mind and memory of the defendant as to what he saw and did in the operative area. This was beyond her power to do. We find that she did enough under the circumstances to make out a prima facie case of negligence.

Id.

With the enactment of AS 09.55.540(b), a plaintiff must offer more than what Patrick did to make out a prima facie case of negligence. Defendant argues that this means that a plaintiff cannot make out a prima facie case of negligence without a specific showing of what the medical provider did wrong. Here, defendant argues that plaintiff has not specified what Dr. Kretzschmar did wrong, but rather that her theory of negligence is that because she did

-7-

not have lingual nerve damage before the extraction, the lingual nerve damage she now has must have been caused by the doctor's negligence.

Defendant contends that Dr. Staley has not identified any specifics about when the alleged negligence occurred in this case. Rather, defendant contends that Dr. Staley has opined that because plaintiff's lingual nerve was damaged, the drill must have slipped during the extraction. Dr. Staley testified at his deposition that his opinion was based on "[t]he severity of the injury. Something happened during that surgery that cause[d] a Class IV injury to that nerve" and that it was the drill that caused "that type of injury."[21] Defendant argues that this is a <u>res ipsa loquitur</u>-type opinion, as even Dr. Staley admitted. At his deposition, when asked if his opinion was a <u>res ipsa loquitur</u>-type opinion, Dr. Staley testified that it was "basically the same type of thing. I mean, . . . he's using an instrument that is under his control. And if he uses it properly and takes the necessary precautions to prevent injury to the lingual nerve, then an injury is not going to occur."[22] Dr. Staley testified that Dr. Kretzschmar

> allowed the drill to slip. You know, the precautions he didn't take, whether he was not paying attention -- I mean, I have no idea what he was doing exactly. But, obviously, he lost control of the drill which caused the injury to the lingual nerve.[23]

---

[21]Dr. Staley Deposition at 63:5-65:11, Exhibit B, Motion for Summary Judgment, Docket No. 63.

[22]<u>Id.</u> at 67:17-68:3.

[23]<u>Id.</u> at 68:9-13.

-8-

Dr. Staley testified that there was nothing in Dr. Kretzschmar's report to indicate exactly what Dr. Kretzschmar was doing "at the time when the lingual nerve was injured[.]"[24]  Dr. Staley testified that "why the drill slipped, who knows.  I mean, was he not paying attention, was he talking to the assistant, was he looking at the clock.  Who knows what happens in these things."[25]  Because Dr. Staley cannot identify what exactly Dr. Kretzschmar was doing at the time of plaintiff was allegedly injured, defendant insists that Dr. Staley's opinion "reflects that very sort of theory that the legislature rejected when it enacted AS 09.55.540(b)[.]"[26]

Plaintiff is not relying on an impermissible res ipsa loquitur-type theory of negligence. The evidence that plaintiff will offer to prove her medical malpractice claim is not limited, as was the case in Patrick, to evidence that she did not have any problems prior to the wisdom teeth extraction but now has permanent pain and function issues.  Dr. Staley has not merely opined that negligence must have occurred during the extraction because plaintiff was fine before the extraction and now is not.  Rather, Dr. Staley has explained the basis for his opinion that more probably than not the injury to plaintiff's lingual nerve occurred because the drill slipped during the surgery.  Dr. Staley explains that during plaintiff's corrective surgery after the injury, the reanastomosis surgery performed by Dr. Zuniga, "they found the

---

[24]Id. at 62:19-24.

[25]Id. at 98:17-20.

[26]Motion for Summary Judgment at 14, Docket No. 63.

neuroma. They found the nerve basically severely severed or basically almost completely severed. There are a few fibers hanging together. More probable than not what caused that type of injury was the drill."[27] It is not fatal to plaintiff's theory of negligence that Dr. Staley does not know the exact moment that the drill slipped or the exact reason why the drill slipped. It is sufficient that Dr. Staley has opined that it is more probable than not that what happened here was that the drill slipped and that this is what caused plaintiff's injury. Dr. Staley has provided a basis for his opinion about the cause of plaintiff's injury and is not relying solely on a presumption of negligence.

In sum, Dr. Staley's opinion is not an impermissible <u>res ipsa loquitur</u>-type opinion,[28] as defendant contends. Because it is not such an opinion, defendant is not entitled to summary judgment that plaintiff's medical malpractice claim fails as a matter of law.

Secondly, defendant moves for summary judgment on the grounds that Dr. Staley is not competent to testify as an expert witness. In Alaska,

> [i]n an action based on professional negligence, a person may not testify as an expert witness on the issue of the appropriate standard of care unless the witness is
>
> (1) a professional who is licensed in this state or in another state or country;

---

[27]Staley Deposition at 64:13-17, Exhibit D, Opposition to Motion for Summary Judgment, Docket No. 22.

[28]Because Dr. Staley's opinion is not an impermissible <u>res ipsa loquitur</u>-type opinion, the court need not consider the parties' arguments regarding the opinions of Dr. Freeman, one of plaintiff's rebuttal experts.

(2) trained and experienced in the same discipline or school of practice as the defendant or in an area directly related to a matter at issue; and

(3) certified by a board recognized by the state as having acknowledged expertise and training directly related to the particular field or matter at issue.

AS 09.20.185(a).

Defendant argues that Dr. Staley does not meet the requirements of AS 09.20.185(a) because he was not a licensed dentist when he formed his opinions, wrote his reports, or testified at his expert deposition. There is no dispute that Dr. Staley's license was retired as of March 31, 2019,[29] which was prior to the date of Dr. Staley's original expert report, rebuttal report, and expert deposition. And, although Dr. Staley had his license reinstated on September 10, 2020, defendant argues that this is irrelevant because he was not competent at the time he offered his opinions. Moreover, defendant points out that Dr. Staley's current license restricts him "from practicing clinical oral and maxillofacial surgery[,]"[30] and limits him to "be[ing] an expert witness and do[ing] chart reviews."[31] This is in keeping with what Dr. Staley informed the Oregon Board of Dentistry when he sought to have his license restated. He informed the Board that "I have no intent of hands on practicing oral surgery

---

[29]Exhibit E, Motion for Summary Judgment, Docket No. 63.

[30]Exhibit K at 2, Motion for Summary Judgment, Docket No. 63.

[31]Exhibit O at 1, Motion for Summary Judgment, Docket No. 63.

-11-

in Oregon. With my retirement I will continue to consult on legal matters."[32] Defendant contends that Dr. Staley did not get relicensed to actually work as a dentist but rather to be an expert witness in this lawsuit. Defendant argues that this makes Dr. Staley a "hired gun" expert, the very sort of expert the witness competency statute was attempting to preclude.

Plaintiff advances two arguments in response. First, plaintiff argues that AS 09.20.185(a) does not apply in this case because Alaska "has not recognized a board that has certified the witness in the particular field or matter at issue." AS 09.20.185(b). Plaintiff contends that the particular field at issue in this case is general dentistry and that Alaska has no board that "certifies" dentists.

This argument fails. Alaska has a Board of Dental Examiners which is responsible for "the credentialing, registration, and licensure" of dentists within the state. AS 08.36.070(a)(1). In short, there is a state board that certifies dentists.

Secondly, even if AS 09.20.185(a) does apply here, which it does, plaintiff argues that it is sufficient that Dr. Staley was licensed at the time of the alleged negligence. Plaintiff argues that the date of the alleged negligence is the relevant date for the licensing requirement in AS 09.20.185(a), not the date of the expert's opinions or testimony, as defendant contends.

The Alaska Supreme Court has never addressed the question of when the licensing requirement in AS 09.20.185(a)(1) must be met. "In the absence of such a decision, a federal

---

[32]Exhibit I at 1, United States' Opposition [etc.], Docket No. 75.

-12-

court must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance." Vestar Development II, LLC v. General Dynamics Corp., 249 F.3d 958, 960 (9th Cir. 2001) (citation omitted). "When interpreting a statute," the Alaska Supreme Court "consider[s] its language, its purpose, and its legislative history, in an attempt to give effect to the legislature's intent, with due regard for the meaning the statutory language conveys to others, and adopt[s] the rule of law that is most persuasive in light of precedent, reason, and policy." In re Estate of Maldonado, 117 P.3d 720, 725 (Alaska 2005) (citation omitted). The Alaska Supreme Court is "reluctan[t] to adopt statutory constructions that reach absurd results." Schacht v. Kunimune, 440 P.3d 149, 151 (Alaska 2019) (citation omitted).

Plaintiff argues that her proposed construction of AS 09.20.185(a)(1) is reasonable because the expert is opining as to the standard of care, and the standard of care in a medical malpractice case is that which existed at the time the alleged negligent act occurred. See AS 09.55.540(a)(1) (emphasis added) (in a medical malpractice case, plaintiff has burden of proving "the degree of knowledge or skill possessed or the degree of care ordinarily exercised under the circumstances, at the time of the act complained of"). Plaintiff also argues that other courts have held that the licensing requirement refers to the time of the alleged negligent act, not the time the expert first offers his opinions or testifies at trial, citing

to <u>Lopez v. Osuna</u>, 453 S.W.3d 60 (Tex. Ct. App. 2014), and <u>Rock v. Crocker,</u> 884 N.W.2d 227 (Mich. 2016).

Neither <u>Lopez</u> nor <u>Rock</u> provides the court with any guidance in predicting how the Alaska Supreme Court would interpret AS 09.20.185(a)(1). The statute at issue in <u>Lopez</u> was not a witness competency statute but rather a statute which defined who was a health care provider under Texas law. <u>Lopez</u>, 453 S.W.3d at 65-66. In <u>Rock</u>, the court was considering a witness competency statute which imposed "a licensure requirement, a specialty requirement, and a board-certification requirement." <u>Rock</u>, 884 N.W.2d at 235. But, "[w]ith respect to the licensure requirement, the parties d[id] not dispute that the expert must be licensed at the time of the testimony." <u>Id.</u>

The court predicts that the Alaska Supreme Court would hold that the licensing requirement in AS 09.20.185(a)(1) must be met at the time the witness testifies. AS 09.20.185 is a "rule of 'witness competency'" <u>Liebsack v. United States</u>, 731 F.3d 850, 857 (9th Cir. 2013), and "[c]ompetence refers to the condition of the witness at the time he or she is called to testify." <u>Kline v. Ford Motor Co.,</u> 523 F.2d 1067, 1069 (9th Cir. 1975). AS 09.20.185(a) provides that "a person may not testify as an expert witness" on the standard of care unless that person meets the requirements in subsections (1)-(3). The statute is plainly focused on whether an expert witness is competent to <u>testify</u>, a clear indication that the licensing requirement must be met at the time the expert testifies.

-14-

There is no dispute that Dr. Staley was not licensed when he formed his opinions, wrote his expert reports, or sat for his expert deposition. However, that would not necessarily be fatal to plaintiff's case if Dr. Staley were to be licensed by the time he testifies at trial. As set out above, Dr. Staley reactivated his license in 2020, but that license expired on March 31, 2021, and Dr. Staley has averred that he will not be "undergoing the arduous tasks of getting re-licensed as a dentist – for any purpose."[33] Dr. Staley explains that he will not be getting relicensed because his wife has been battling ovarian cancer since 2019 and he has a back condition that has "significantly worsened" and will require surgery.[34] Because Dr. Staley has no intention of getting relicensed, on February 1, 2021, he withdrew "as a witness in th[is] case[.]"[35] That means that plaintiff will not be able to rely on Dr. Staley's testimony in support of her medical malpractice claim when this case goes to trial. And, without Dr. Staley's testimony, plaintiff will not be able to prove her claim at trial, which would entitle defendant to summary judgment on plaintiff's medical malpractice claim unless plaintiff is allowed to replace Dr. Staley as her standard-of-care expert.

To that end, on February 5, 2021, plaintiff moved for leave to replace Dr. Staley as her standard-of-care expert. Plaintiff proposes replacing Dr. Staley with Dr. Hamlet

---

[33]Staley Declaration at 3, ¶ 13, Docket No. 66.

[34]Id. at 1, ¶ 5; 2-3, ¶ 13.

[35]Id. at 3, ¶ 14.

Garabedian, DMD, MD FACS , who is board-certified in oral and maxillofacial dentistry.[36] Plaintiff's counsel has informed Dr. Garabedian "that his opinions will be confined to those expressed in Dr. Robert Staley's expert reports."[37]

Because the deadlines for expert disclosures have expired and discovery in this case has closed, the court would have to modify the scheduling and planning order in order to allow plaintiff to designate another standard-of-care expert and reopen expert discovery. Rule 16(b)(4) provides that a plaintiff must show "good cause" in order to modify the scheduling and planning order. "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment. The district court may modify the pretrial schedule 'if it cannot reasonably be met despite the diligence of the party seeking the extension.'" Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992) (quoting Fed. R. Civ. P. 16 advisory committee's notes (1983 amendment)). "Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification." Id. at 609. "If that party was not diligent, the inquiry should end."[38] Id.

_____

[36]Declaration of Counsel at 2, ¶¶ 3-4, Docket No. 31.

[37]Id. at 2, ¶ 5.

[38]Plaintiff cites to Park v. CAS Enterprises, Inc., Case No. 08cv385 DMS (NLS), 2009 WL 4057888, at *3 (S.D. Cal. Nov. 19, 2009), which addressed four additional factors to consider when deciding a Rule 16(b) motion. The Park court derived these factors from
(continued...)

-16-

Defendant argues that plaintiff cannot show good cause because she has not been diligent. Defendant points out that Dr. Staley retired his license in March 2019, which was before discovery in this case started, but that plaintiff did not first seek to replace Dr. Staley until two days before the close of discovery on March 6, 2020 and after expert disclosures were due. Defendant also argues that the issues which are causing Dr. Staley to withdraw as a witness have long been known in that his wife has had cancer since 2019 and Dr. Staley knew his reinstated license was only valid for one year. Given this information, defendant contends that plaintiff waited to do anything until she filed her current motion for leave to replace Dr. Staley in February of this year. Defendant also suggests that plaintiff's counsel was not diligent in selecting Dr. Staley as an expert witness to begin with. Defendant contends that plaintiff's counsel should have been aware that Dr. Staley had been semi-retired for more than ten years, see Pipher v. Loo, Case No. CV2004-014201, 2004 WL 5579002 (Ariz. Super. Ct. 2004) (partial expert testimony),was in his 70's, and did not have a license when discovery in this case began.

The issue here is not whether plaintiff was diligent in selecting Dr. Staley as an expert witness, but to the extent that defendant is contending that there was something improper about plaintiff selecting an expert who was in his 70's or that plaintiff had a duty to

---

[38](...continued)
Galdamez v. Potter, 415 F.3d 1015, 1020 (9th Cir. 2005), in which the court was considering a motion to modify a final pretrial order, which is governed by the "manifest injustice" standard of Rule 16(e), not the "good cause" standard found in Rule 16(b).

-17-

continually check on her expert's licensing status, that contention is wrong. As to the question at hand, the court finds that plaintiff has been diligent in seeking to replace Dr. Staley. When plaintiff first learned at Dr. Staley's deposition on March 2, 2020, that he no longer had a license, she filed a motion to add an additional standard-of-care expert two days later on March 4, 2020.[39] After the COVID-19 stay of this case was lifted, the court, on June 11, 2020, deferred its consideration on all the motions pending in this case to allow additional time for Dr. Staley to get relicensed.[40] On September 22, 2020, the court denied plaintiff's motion for leave to designate an additional expert as moot because Dr. Staley had been relicensed.[41] The court then allowed additional time for discovery related to Dr. Staley and stayed the briefing on defendant's motion for summary judgment.[42] On January 19, 2021, defendant filed the instant motion for summary judgment. Plaintiff's counsel first learned that Dr. Staley was withdrawing on February 1, 2021[43] and plaintiff's motion for leave to replace Dr. Staley was filed just a few days later, on February 5, 2021. This time line illustrates that plaintiff has been diligent in seeking leave to replace Dr. Staley. Contrary to defendant's contention, plaintiff could not have foreseen that Dr. Staley would decide to

---

[39]Docket No. 18.

[40]Docket No. 40 at 1.

[41]Docket No. 52.

[42]Docket No. 61.

[43]Declaration of Counsel at 1, ¶ 2, Docket No. 67.

-18-

withdraw as an expert because he did not want to go through the rigors of the relicensing procedure[44] due to his health and his wife's health.

Because plaintiff has been diligent in seeking leave to replace Dr. Staley, she has shown good cause to modify the scheduling and planning order. That does not end the court's inquiry however. When, as here, "a plaintiff fails to request an extension to a deadline until after that deadline has passed, the plaintiff must also demonstrate 'excusable neglect' for failing to timely request the extension." Wakefield v. Olenicoff, Case No. SACV 12-2077 AG (RNBx), SACV 12-2094 AG (RNBx), 2014 WL 12597445, at *2 (C.D. Cal. March 24, 2014). "Federal Rule of Civil Procedure 6(b)(1) states that when an act 'must be done within a specified time,' and the motion to extend the time is made 'after the time has expired,' the court may extend the time 'if the party failed to act because of excusable neglect.'" Id. (quoting Fed. R. Civ. P. 6(b)(1)). "[T]he determination of whether neglect is excusable is an equitable one that depends on at least four factors: (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith." Bateman v. U.S. Postal Service, 231 F.3d 1220, 1223–24 (9th Cir. 2000). Rule 6(b), "like all the Federal Rules of Civil Procedure, [is] to be liberally construed to effectuate the

---

[44]Dr. Staley has averred that in order to get his license renewed, he would "have to complete 40 more hours of continuing-education classes, take a diversity class, and complete a jurisprudence test." Staley Declaration at 2, ¶ 12, Docket No. 66.

general purpose of seeing that cases are tried on the merits." <u>Ahanchian v. Xenon Pictures,</u> <u>Inc.</u>, 624 F.3d 1253, 1258–59 (9th Cir. 2010) (citation omitted).

As for the first factor, defendant argues that it will suffer substantial, irreparable prejudice if plaintiff is allowed to replace Dr. Staley "because he is a uniquely unqualified, impeachable, and unprepared expert witness."[45]  Defendant argues that plaintiff should not be allowed to replace Dr. Staley with a more qualified and less impeachable expert witness. Defendant also argues that it would be prejudiced because it has already produced its experts to rebut Dr. Staley's opinions, which means that plaintiff has full knowledge of the positions that defendant plans to take in defending against her medical malpractice claim.  Defendant also argues that it will be prejudiced because it has already expended substantial resources in preparing its defense on the premise that Dr. Staley would be plaintiff's standard-of-care expert. Defense counsel avers that defendant has "incurred $13,759.29 in total costs because of [p]laintiff's use of Dr. Staley as an expert witness."[46]

The court is not convinced that plaintiff is seeking to replace Dr. Staley merely in an attempt to get a "better" expert, in large part because plaintiff is proposing that the substitute expert will offer the same opinions as Dr. Staley did.  In addition, most of the other prejudice of which defendant complains can be cured.  The new expert can be precluded from having access to defendant's expert reports until he discloses his report and plaintiff can be required

---

[45]United States' Opposition [etc.] at 17, Docket No. 75.

[46]Declaration of John Fonstad [etc.] at 6-7, ¶ 8, Docket No. 76.

to pay the costs associated with replacing her standard-of-care expert. The court finds that the prejudice to defendant does not preclude a finding of excusable neglect.

As for the second factor, the length of delay and its potential impact on judicial proceeding, allowing plaintiff to replace Dr. Staley will not impact the orderly and efficient conduct of the trial as no trial date has yet been set in the case and, given the backlog of criminal trials as a result of the COVID-19 pandemic, it is not likely that a trial date will be set anytime soon. But, allowing plaintiff to replace Dr. Staley will impact the schedule in this case as it will require another round of expert discovery. In addition, as defendant has pointed out, there are other aspects of this case that may be impacted, such as plaintiff's claimed economic losses and future care needs, because more than one year has passed since there was any discovery on these issues. But, any potential delays do not override the general principle that all cases, including this one, should be tried on the merits. The second factor does not weigh against a finding of excusable neglect.

As for the third factor, the reason for the delay, defendant argues that plaintiff has not offered a good reason for Dr. Staley's withdrawal as an expert witness. Defendant contends that there have been no unexpected circumstances in this case. Defendant suggests that Dr. Staley only decided to withdraw from this case because defendant filed its renewed motion for summary judgment and that the reasons he has given in his declaration were long known to him. Defendant also argues that the timing of plaintiff's motion to replace Dr. Staley is

-21-

suspicious given that it was filed only after defendant obtained additional discovery related to Dr. Staley and filed its renewed motion for summary judgment.

While defendant is correct that Dr. Staley's health concerns and those of his wife were known to Dr. Staley for some time prior to his withdrawal, Dr. Staley's reason for withdrawing is not simply because of these health concerns. If that were the only reason, it is likely Dr. Staley would continue to act as an expert witness in this case, as he is doing in the other cases to which defendant has pointed. But, Dr. Staley has stated that he does not want to go through the process of getting relicensed, which involves a fair amount of work and which would take substantial time away from caring for his wife and tending to his own health issues. It is the court's perception that this is a legitimate reason for Dr. Staley to withdraw as an expert witness in this case. The court also does not find the timing of plaintiff's motion to replace Dr. Staley suspicious. Rather, plaintiff promptly filed the motion to replace Dr. Staley once he informed her counsel that he was withdrawing as an expert witness. The third factor weighs in favor of a finding of excusable neglect.

The fourth factor requires the court to consider whether plaintiff has acted in good faith. Defendant argues that there has clearly been bad faith here, as illustrated by the fact that Dr. Staley continues to be an active expert witness in a number of cases,[47] including sitting for a deposition after declaring his unavailability in this case.[48] But, the fact that Dr.

---

[47]See United States' Opposition [etc.] at 7, Docket No. 75 (listing cases).

[48]Notice of Deposition of Robert W. Staley, Jr., D.D.S. [etc.] at 1, Exhibit V, United (continued...)

-22-

Staley continues to be an active expert in other cases does not mean that there has been bad faith in this case. The issue for Dr. Staley in this case has been that Alaska requires experts in medical malpractice cases to be licensed at the time they testify. That is apparently not the situation in every state. Thus, Dr. Staley can continue to serve as an expert witness in other cases without getting relicensed. The stumbling block for him in this case has been the licensing requirement. Moreover, defendant is focusing on Dr. Staley's conduct,[49] rather than plaintiff's. "The good faith analysis under Rule 6(b)(1)(B) looks to whether <u>the failure to file</u> in a timely fashion was in bad faith or [in an attempt] to obtain any advantage." <u>Wolf v. Discover Financial Services Inc.</u>, Case No. CV-19-04989-PHX-JAT, 2021 WL 66272, at *4 (D. Ariz. Jan. 7, 2021) (citation omitted) (emphasis added). There is no evidence that suggests that plaintiff's failure to move to replace Dr. Staley prior to the close of expert discovery was done in bad faith or in an attempt to gain any tactical advantage. The fourth factor weighs in favor of a finding of excusable neglect.

Based on the foregoing, the court finds that plaintiff's failure to move to replace Dr. Staley as her standard-of-care expert prior to the expiration of the deadlines for expert

---

[48](...continued)
States' Opposition [etc.], Docket No. 75 (noticing deposition for February 16, 2021).

[49]In this regard, defendant also accuses Dr. Staley of lying about his expert work. The court need not consider these arguments as they have little, if anything, to do with whether plaintiff has acted in bad faith in seeking to replace Dr. Staley. For this reason, defendant's motion to supplement its opposition to plaintiff's motion for leave to replace her standard of care expert is denied. And, defendant's motion to strike plaintiff's opposition to its motion to supplement is denied as moot.

-23-

disclosures and discovery was due to excusable neglect. Plaintiff has lost her standard-of-care expert through no fault of her own. Plaintiff could not have predicted that Dr. Staley would decide to not renew his license. This case should be decided on its merits, not on a technical issue related to expert testimony.

Plaintiff has established both good cause under Rule 16(b) and excusable neglect under Rule 6(b)(i). Her motion for leave to replace Dr. Staley as her standard-of-care expert is granted, which means that defendant is not entitled to summary judgment on the grounds that plaintiff has no standard-of-care expert.

## Conclusion

Defendant's motion for summary judgment[50] is denied. Plaintiff's motion for leave to replace her standard-of-care expert[51] is granted, with the following conditions:

1)  Plaintiff must formally withdraw Dr. Staley as her standard-of-care expert and disclose the name of her new standard-of care-expert by April 20, 2021.

2)  Plaintiff's new expert may not offer any opinions, or support for opinions, that were not set forth in Dr. Staley's reports.

3)  Plaintiff shall not disclose or discuss defendant's expert reports with her new standard-of-care expert until she has served that new expert's report on defendant.

---

[50]Docket No. 63.

[51]Docket No. 65.

-24-

4) Plaintiff must pay the costs defendant has incurred with regard to Dr. Staley in the amount of $13,759.29.  Payment of these costs is, however, deferred until a final judgment has been entered in this case.

5) Expert discovery as it pertains to the new expert shall be reopened.  On or before April 20, 2021, the parties shall confer, and on or before April 27, 2021, propose to the court a schedule for the discovery related to plaintiff's new standard-of-care expert.

6) Once expert testimony is completed as to the new expert, the parties shall provide the court with a joint status report.

Defendant's motion to supplement its opposition to plaintiff's motion for leave to replace her standard of care expert[52] is denied as is defendant's motion to strike plaintiff's response to the motion to supplement.[53]  And, plaintiff's conditional motion for an enlargement of time to respond to defendant's motion for summary judgment[54] is denied as moot.

DATED at Anchorage, Alaska, this 6th day of April, 2021.

/s/ H. Russel Holland
United States District Judge

---

[52]Docket No. 78.

[53]Docket No. 82.

[54]Docket No. 68.

-25-